Michael G. Dustin, ISB #7666
mgd@meachamdustin.com
Erika Lessing, ISB #6797
el@meachamdustin.com
**MEACHAM & DUSTIN, PLLC**
2058 Jennie Lee Drive
Idaho Falls, ID  83404
Phone: (208) 522-0022
Facsimile: (208) 522-0088

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID SHYMATTA, dba CELL JUNKIE, ) | CASE NO. 10-0565-E-MHW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL PAPILLON, dba THE CELL ) | |
| PHONE JUNKIE, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant MICHAEL PAPILLON, by and through his attorneys Meacham & Dustin,

PLLC, submits the following points and authorities in support of his Motion to Dismiss for lack

of Jurisdiction over the Person.

### I. GENERAL  BACKGROUND

Michael Papillon ("Papillon"), an Arizona resident, is a cell phone and electronic

technology enthusiast. He has been reviewing and blogging[1] about cell phones and related technologies as a hobby for approximately 10 years.[2] He has become a small but respected voice on the Internet who provides news, reviews, opinions, and information about cell phone technology and related products and services.[3] Papillon uses "The Cell Phone Junkie" as his internet username or handle. He utilized a similar version of the username ['azcellphonejunkie'] beginning in about 2000 or 2001.[4] In July 2006, Papillon transitioned from blogging on others' blogsites to blogging on his own blogsite or website, "The Cell Phone Junkie," in homage to his original handle.[5] The website for Papillon's blog is found at: www.thecellphonejunkie.com (the "TCPJ" or "TCPJ Website").

Since the establishment of the TCPJ Website, Papillon has been blogging and also podcasting through that site. The TCPJ Website is available for public viewing and the basic podcasts are available to the public for free.[6] These blogs and written posts on the TCPJ Website discuss cell phone and smart phone products and applications, hand-held PDAs [personal digital assistants] like the Blackberry®, and applications related to other small handheld digital devices.[7] Occasionally, Papillon will travel to cellphone/PDA tradeshows to view and review products,

---

[1] A "blog" is defined as an electronic opinion-editorial article. A "podcast" (or non-streamed webcast) is defined as a series of digital media files (either audio or video) that are released episodically and downloaded through web syndication. A "post" is a written entry, much like a journal entry or opinion-editorial piece.

[2] Affidavit of Michael Papillon, ¶¶ 3 - 4.

[3] Affidavit of Michael Papillon, ¶¶ 1 & 3.

[4] Affidavit of Michael Papillon, ¶5.

[5] Affidavit of Michael Papillon, ¶6.

[6] Affidavit of Counsel, ¶ 5.

[7] Affidavit of Michael Papillon, ¶7.

BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION          -2-

services, and gather other information relevant to the tech and cell phone industry.  All podcasts are written by Papillon in Arizona or Minnesota and all the written blogs and podcasts originate or are sent from Arizona.[8]

Neither Papillon nor the TCPJ Website are vendors, distributors, sellers, nor manufacturers of any tangible product.[9]  The *only* thing which may be purchased directly at the TCPJ Website is a subscription to 'premium' podcasts hosted by Papillon [the regular podcasts are available for free through the TCPJ website].[10]  The TCPJ Website contains links to certain third-party's websites purely as a courtesy to users who seek additional information about products or services.  Papillon is not paid any commission or royalty for providing any such links.  Fees generated from those 'premium' podcasts, whether accessed through the TCPJ Website or via an iPhone or other smart phone as an application, are very limited.  For the last year, the TCPJ Website has only grossed approximately $3,000 from the sale of the 'premium' podcasting services.[11]

Papillon's activities on or associated with the TCPJ Website are limited in scope.  It is a very small operation run almost exclusively by Papillon. Papillon has never taken out any advertisements for the TCPJ Website. The TCPJ website is viewed only by a modest amount of cellphone enthusiasts.[12]  Papillon's blogging and podcasting activities are and have been limited

---

[8]Affidavit of Michael Papillon, ¶ 9.

[9]Affidavit of Michael Papillon, ¶¶10-11.

[10]The premium podcasts are called "The Cell Phone Junkie Unlocked" and can be accessed either through the TCPJ Website or through an iPhone application "app."

[11]Affidavit of Michael Papillon, ¶15.

[12]Affidavit of Michael Papillon, ¶20.

BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION          -3-

to Arizona, and to a lesser extent, Minnesota. Papillon has never visited Idaho for the purpose

of visiting tradeshows or gathering other tech information. Indeed, Papillon has never been to

Idaho for any purpose.[13]

## II.   CASE BACKGROUND

Plaintiff Shymatta owns or operates a website which purports to sell cell phone

accessories and which has a name similar to TCPJ Website name. Plaintiff Shymatta brought this

suit alleging trademark infringement and unfair competition and further avers that Papillon has

committed tortious acts in Idaho and that Papillon has sued Plaintiff Shymatta in Idaho. Papillon

has never conducted any commercial transaction with Plaintiff Shymatta nor has Plaintiff

Shymatta ever subscribed to a premium podcasting service from the TCPJ Website.[14] Further,

Papillon has never sued Plaintiff Shymatta in Idaho. A review of the Idaho State Judiciary's data

repository and of the federal repository system, PACER, shows that Papillon has no past nor

pending action whatsoever against Plaintiff Shymatta in any federal or appellate court.[15]

## III.   LEGAL STANDARDS RELATING TO A MOTION TO DISMISS BASED UPON LACK OF PERSONAL JURISDICTION

The Court's power to exercise personal jurisdiction over a non-resident defendant is

limited both by the applicable state personal jurisdiction statute ("long-arm statute") and the

Fourteenth Amendment of the United States Constitution, i.e. the Due Process Clause.[16] Due

---

[13]Affidavit of Michael Papillon, ¶¶ 1&2.

[14]Affidavit of Michael Papillon, ¶19.

[15]Affidavit of Counsel, ¶¶ 6-9.

[16]Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977).

process of a defendant requires that, before a non-resident can be haled into a court of a particular

forum, a plaintiff must establish that the particular defendant had certain minimum contacts with

the forum. The contact must be such that the traditional notions of fair play and substantial

justice are not offended by the exercise of jurisdiction.[17] Additionally, the defendant's conduct

and connection with the forum must be such that the defendant could or should reasonably

anticipate being haled into a court of the forum should a dispute arise.  The focus of a personal

jurisdiction determination is primarily upon the relationship between the defendant and the

forum.[18]

There are two forms of personal jurisdiction - general and specific.[19]  General jurisdiction

may be asserted when the defendant's activities in the forum state are continuous and systematic

or substantial.  Unless a defendant's contacts with a forum are so substantial, continuous, and

systematic that the defendant can be deemed to be "present" in that forum for all purposes, a

forum may exercise only "specific" jurisdiction.  Specific jurisdiction is based on the relationship

between the defendant's forum contacts and plaintiff's claims.[20]

Specific jurisdiction is determined by the application of a three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate
some transaction with the forum or resident thereof; or perform some act by which he
purposefully avails himself of the privilege of conducting activities in the forum,
thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-
related activities; and

---

[17] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

[18] Data Disc, 557 F.2d at, 1286.

[19] Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414 (1984).

[20] Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007).

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.[21]

The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state and the case *must* be dismissed from the forum.[22]  On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, then the burden shifts to the defendant to present a 'compelling case' that the exercise of jurisdiction would not be reasonable.[23]

## IV.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS THIS COURT LACKS PERSONAL JURISDICTION

### A.    There Is No General Personal Jurisdiction in This Case.

### TEST: Continuous, Systematic, Substantial Activity in the Forum.

Plaintiff Shymatta seeks to haul Papillon into this Court on the basis that Papillon has a blog and website which are viewable in Idaho.  However, to establish general jurisdiction in Idaho District Court, Plaintiff Shymatta must prove that Papillon engaged in continuous, systematic, or substantial commercial activity in Idaho.  Plaintiff Shymatta has not met and cannot meet this burden.

In *Perkins v. Benguet Consol. Mining Co*[24], the U.S. Supreme Court set forth the kind of continuous, systematic or substantial activity necessary to establish personal jurisdiction over a

---

[21]Id. at 1057, *citing* Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).

[22]Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).

[23] Menken v. Emm, 503 F.3d at 1057 *citing* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985).

[24] Perkins v. Benguet Consol. Mining Co, 342 U.S. 437 (1952).

BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION          -6-

non-resident business or corporation.  The Court cited the fact that the foreign corporation's president and general manager maintained an office in the forum state, the general manager cut paychecks in the forum state, maintained office files in the forum state, carried on correspondence relating to the business in the forum state, held director meetings in the forum state, and used two local banks in the forum state to hold company funds.

Another case that sets forth activities that are considered continuous, systematic or substantial for purposes of personal jurisdiction is *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, a Florida case.  In that case, general personal jurisdiction was found where the defendant corporation's vice president admitted that the corporation solicited sales in Florida, received $6.5 million in annual revenues from Florida residents, entered into contracts in Florida, leased office space for use by sales personnel soliciting sales in Florida, maintained three separate branch stores in Florida, provided training in Florida, sent representatives to trade shows in Florida, and organized/held a full day convention for its product at a convention center in Florida.[25]

Plaintiff Shymatta cannot establish that Papillon engaged in continuous, systematic, or substantial activity in Idaho thus subjecting Papillon to the general jurisdiction of this Court. Papillon's contacts with the State of Idaho are undeniably more tenuous than those set forth in *Perkins* and *Perfect Web*.  Papillon is a resident of Arizona[26], he uses Arizona as his primary situs both for the broadcasting or podcasting of his shows and as the primary locus from whence he posts written information onto his blog.[27]  Neither Papillon nor the TCPJ website has sold any

---

[25]Perfect Web Techs., Inc. v. InfoUSA, Inc., 2007 U.S. Dist. LEXIS 69674.

[26]Affidavit of Michael Papillon, ¶1.

[27]Affidavit of Michael Papillon, ¶9.

product into Idaho.[28]  Papillon has never visited Idaho for any reason. There has been no advertising of the TCPJ Website in Idaho written publications, no television or cable ads for the TCPJ Website aired on Idaho television stations, and no web advertising specifically targeted to Idahoans.[29]  In short, there has been no substantial, nor continuous, nor systematic contact between Papillon, and the State of Idaho. As Plaintiff Shymatta has failed to prove any continuous, systematic, and\or substantial commercial activity in Idaho, there can be no finding of general jurisdiction over Papillon in this Court.

**B.      There Is No Specific Personal Jurisdiction in This Case.**

**TEST: Purposeful Availment; Forum-Related Activities; Fairness and Justice.**

As an alternative to general personal jurisdiction, Plaintiff Shymatta seeks to haul Papillon into this Court on the basis of specific personal jurisdiction by alleging that Papillon has sued Plaintiff Shymatta in Idaho and/or has committed a tortious act while in Idaho. Plaintiff Shymatta has not and cannot meet this burden. As stated above, it is an incorrect statement, if not a purposefully perpetrated falsehood, that Papillon has sued Plaintiff Shymatta in Idaho. No such case exists. Further, there has been no tortious act committed by Papillon which should confer specific jurisdiction in this case.

Cases of specific personal jurisdiction are appropriate where the defendant has made an act of commission or otherwise reached out to the state or forum. Such typical cases include

---

[28]Affidavit of Michael Papillon, ¶10-11.

[29]Affidavit of Michael Papillon, ¶20.

BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION          -8-

instances where a defendant sends goods into a forum[30] or where a defendant enters into a major

contract or multiple contracts with citizens or residents of the forum.[31] The two primary

requirements are that the defendant, with purpose and intent, reached out to the forum or the

forum's resident(s) and that the complaint of a plaintiff has to do in some way with the acts of the

defendant in the forum.

     In other words, to succeed on a claim of specific personal jurisdiction, it must be found:

1.    There was purposeful availment by the defendant in the forum by defendant's conduct of activities in or toward the forum and invoking the benefits and protections of the forum's laws.
2.    The claim relates to the forum-related activities.
3.    The exercise of jurisdiction is fair and substantially just.

       **a.**   **Prong One - No evidence of purposeful availment.**

     The United States Supreme Court has, in *Calder v. Jones*, set forth a further test to

determine whether prong one, purposeful availment, is met. The Calder Court held that a foreign

act which is both aimed at *and* has effect in the forum satisfies the first prong of the specific

personal jurisdiction analysis.[32]   To satisfy this test the defendant must have (1) committed an

intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt

of which is suffered and which the defendant knows is likely to be suffered in the forum state.

---

[30]Nuance Communs. v. Abbyy Software House, – F3.d– (2010), 2010 US App. LEXIS 23419, a finding of specific personal jurisdiction where defendant, Russian software affiliate, directed activities toward residents of California by bringing software into the state.

[31]Grimes v. Cirrus Indus.,712 F. Supp 2.d 1256 (W.D. Okla. 2010), a finding of specific personal jurisdiction was held appropriate where defendant was 'found in the jurisdiction' and purposfully availed themselves in the forum state pursuant to a distributorship contract/agreement with a forum state distributor which was a continuous and ongoing contractual relationship over ten years.

[32]Calder v. Jones, 465 U.S. 783 (1984).

BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION    -9-

The focus of the Calder case is the second prong, whether the act was expressly aimed at the forum.[33]

   *Rio Properties, Inc. v. Rio Int'l Interlink*,[34] is an illustrative case involving intentional acts expressly aimed at the forum state.  In *Rio*, the plaintiff was a large casino operator in Las Vegas who also owned a gambling division which allowed customers to wager on professional sports.[35] Rio wanted to bring this sports betting to the internet and thus registered a domain name for the site.  The defendant, RII, was an off-shore gambling entity which had an Internet sports gambling operation with a trademark similar to the plaintiffs.  The RII website allowed customers to gamble either through the RII website or via a toll-free number.  RII grossed about $3M annually.[36]  RII advertised its website in a publication printed in or distributed in Nevada [a Nevada edition of the periodical] called "Daily Racing Form."  RII also ran radio spots advertising its gaming on Las Vegas radio stations.[37]  RII challenged the jurisdiction of Nevada Federal District Court on the basis that the court lacked specific personal jurisdiction.

   The interactivity of the RII website was disputed between the parties; they could not agree as to whether the website of RII was merely passive or fully interactive.[38] The Ninth Circuit Court of Appeals held that even if RII operated only a passive website, if RII had engaged in something

---

[33]Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006).

[34]Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2000).

[35]Id.

[36]Id.

[37]Id.

[38]Id.

additional ["something more"] which evidenced targeting of the Nevada forum, that the court could confer specific personal jurisdiction upon RII. The *Rio* Court went on to find that there were sufficient grounds to assert specific personal jurisdiction over the defendant RII because there had been "something more", *i.e.*, acts of conduct purposefully directed at Nevada. RII had undertaken to plan and pay for radio and print advertisements which were then aired or printed and delivered to the Nevada listeners in what the Ninth Circuit called an "insistent marketing campaign directed toward Nevada."[39] These acts constituted the type of "something more" which justified a finding of specific personal jurisdiction was established.

The instant case is distinguishable from *Rio* in that Papillon's activities through the TCPJ Website do not amount to additional actions toward Idaho nor an intent to reach into Idaho. In *Rio*, the defendant had a large and profitable commercial operation where its principal purpose was commerce and where the defendant RII undertook to purposefully target customers in the forum state by advertising its website in print and radio ads in the forum state. Here Papillon and the TCPJ website do not engage in primarily commercial activities. The TCPJ website is not primarily commercial in nature but is essentially a blog used to disseminate opinions and news, not products nor services. And, even though the TCPJ Website takes in modest sums for premium podcasts, most of those sums are not gleaned from Idaho residents. Only .07% of all those who have downloaded programs from the TCPJ Website have been from Idaho.

Most importantly, unlike the defendant in *Rio* which advertised specifically to forum residents, Papillon did not undertake "something more" which would show an express and

---

[39]Rio Properties Inc., 284 F.3d at 1020.

purposeful intent to avail himself and the TCPJ Website in Idaho. There is <u>no</u> evidence of any

action undertaken by the Papillon to purposefully contact Idaho: no evidence of catalogs sent to

Idaho residents, no evidence of products shipped to Idaho, no evidence of advertising in Idaho or

toward Idaho residents and Idaho markets, no evidence of Papillon attending conventions in Idaho

to try and stir up interest in the TCPJ Website, no evidence of corporate sponsorship of local

events in Idaho, no evidence of lobbying by Papillon of the Idaho legislature.  There has simply

been no purposeful contact with Idaho by Papillon.

    As Plaintiff Shymatta has failed to show that Papillon and the TCPJ Website purposefully

direct activities to Idaho and Idaho residents, the first prong of the test [purposeful availment]

cannot be met.

b.  <b>Prong Two - The claims of Plaintiff Shymatta were do not directly<br>relate to any Idaho-based acts.</b>

    The 'express aiming' prong of the test, the second prong, is satisfied when the defendant is

alleged to have engaged in wrongful conduct targeted at a person whom the defendant knows to

be a resident of the forum state.[40]  As discussed above, there was no express aiming at Idaho

residents and there has been presented by Plaintiff Shymatta no evidence which establishes that

Papillon targeted persons whim he knew to be Idaho citizens.

    Indeed, the claims of Plaintiff Shymatta have no relation to Idaho.   Plaintiff Shymatta's

infringement claims focus on activities that are limited only to the Internet as a commercial forum.

There are no claims by Plaintiff Shymatta that any of the infringement occurred specifically in

---

[40]<u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>, 223 F.3d 1082, 1087 (9th Cir. 2000).

BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION          -12-

Idaho.  In other words, there has not been a claim that Plaintiff Shymatta sells cell phones and cell phone accessories from his shop or business in Inkom, Idaho, and that Papillon has sold goods also into Idaho or the surrounding regions which are confusing or diluting Plaintiff Shymatta's alleged mark.  The crux of Plaintiff Shymatta's allegations are that these his mark and that of Papillon exist in cyberspace and that one may be diluting or infringing the other in cyberspace, on the Internet.

These claims for infringement in the digital marketplace have nothing specifically to do with Idaho.  Simply because Plaintiff Shymatta lives in Idaho does not mean that the claims he may have against Papillon qualify as 'Idaho-based acts' or 'Idaho-based torts'.  As Plaintiff Shymatta has not provided sufficient proof that Papillon's actions on the TCPJ Website targeted a person or entity whom the Papillon knew to be a resident of the forum state, a finding of specific personal jurisdiction is not appropriate.

> **c.    Prong Three - There would be no sense of fairness in hailing Papillon into Idaho.**

Even if Plaintiff Shymatta had been able to establish the first prong of the test, specific personal jurisdiction in this case would be improper nonetheless because it would not comport with notions of fair play and substantial justice, the third prong.  In addressing the question of 'fair play and substantial justice' courts are to consider the following seven factors[41]:

---

[41]Panavision Int'l L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998).

- the extent of a defendant's purposeful interjection
- the burden on the defendant in defending in the forum
- the extent of conflict with the sovereignty of the defendant's state
- the forum state's interest in adjudicating the dispute
- the most efficient judicial resolution of the controversy
- the importance of the forum to the plaintiff's interest in convenient and effective relief
- the existence of an alternative forum

### 1.    No extensive interjection.

Papillon has not purposefully availed himself in Idaho, but even if the Court were to find that Papillon purposefully interjected himself into Idaho by blogging on the Internet blogs which were accessible to Idaho residents and accepting modest sums from a limited number of Idaho podcast subscribers, such interjection could not be considered extensive.  Of the hundreds of thousands of podcasts which have been downloaded from the TCPJ website, only 441 of those, or .07%, have been downloaded by persons living in Idaho or those with an Idaho IP [Internet protocol] address.[42]  Besides the limited number of podcasts, there has been no other contact with Idaho residents.  The extent of any contact with Idaho by Papillon, if it could be construed as such, is limited.

### 2.    Too great a burden in cost to be fair or just.

It would be unduly burdensome to require Papillon to answer Plaintiff Shymatta's claims in Idaho due to the cost associated with litigating in this foreign forum.  Papillon's the TCPJ

---

[42]Affidavit of Michael Papillon, ¶¶ 17-18.

website is a hobby not a highly lucrative business.  The TCPJ website generates modest sums and only generated about $3,000 in the last year.[43]  In short, the cost of having to travel to Idaho to defend against a suit for a tiny business endeavor which is actually more like a hobby than a business is too burdensome upon Papillon to be fair and just.

### 3.   Idaho has no special interest in the adjudication and there is an available federal forum in Arizona.

The State of Idaho has no special interest in this matter which necessitates retaining this case in Idaho courts.  There are no issues concerning interstate commerce of goods going into or coming out of Idaho.  Papillon is not a tele-communications provider providing cell or data services which affect Idaho citizens across state lines.  Papillon did not reach out to Plaintiff Shymatta in Idaho to offer goods or services and there was no contract formed between them.  There was no contract between Papillon and Plaintiff Shymatta in Idaho.  Plaintiff Shymatta claims that there has been a tortious act within this state which meant a finding of specific personal jurisdiction , yet Plaintiff Shymatta has not pled a state-law specific claim.  Additionally, there are no novel issues of Idaho-centric law; the primary complaints against Papillon by Plaintiff Shymatta concern federal trademark infringement, including claims under the Lanham Act.  As such there is no specific interest by the State of Idaho in this litigation.

Additionally, there is an available Arizona district court in which Plaintiff Shymatta could file and there is nothing under the statute of limitations which would prohibit nor hinder Plaintiff

---

[43]Affidavit of Michael Papillon, ¶15.

from filing in that court.[44]  Plaintiff made the discovery of the alleged infringement in February

2010[45].  Regardless of which statute of limitations in Idaho is used as the basis for determining

time for filing, *see infra*, Plaintiff Shymatta's alleged claim is only 10 months old and is well

within all statutes of limitation.  Therefore, Plaintiff Shymatta would not be irreparably harmed if

this suit is dismissed and he has to file in Arizona where Papillon is found.

The Court should not exercise specific personal jurisdiction in this matter, even if there is

a finding that Papillon purposefully availed himself in this jurisdiction, because hailing Papillon

into court here does not comport with notions of fair and substantial justice.  Papillon's

exceedingly limited contact with Idaho, less than .07% of all podcasts being sent to Idaho, is

tenuous and substantially inconsequential.  Further, it will be unduly burdensome and expensive

for Papillon to have to defend in Idaho, a burden not supported by his very small blogging

operation.  Additionally, there is a viable alternative available for Plaintiff Shymatta to file in the

jurisdiction where Papillon is found.  As such, the notions of fair play should require this matter

to be dismissed for lack of specific personal jurisdiction.

## V.     CONCLUSION

Plaintiff Shymatta has failed to establish the Court's personal jurisdiction over Papillon.

---

[44]There are no express statutes of limitations for trademark infringement claims under federal law. Federal courts generally follow the limitations period for the most analogous state law cause of action from the state in which the claim is heard. *See* Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 603 F.3d 1133, 1140 (9th Cir. 2010) because the Lanham Act does not have its own statute of limitations, we borrow the most analogous statute of limitations from state law in order to determine whether the plaintiff's delay in filing suit was reasonable.  It has not been determined whether a 5-year or 2-year statute of limitations in Idaho is appropriate. Cornelius v. DeLuca, 709 F. Supp. 2d 1003 (D. Idaho 2010).

[45]Complaint, ¶13.

General personal jurisdiction has not been established in this case because the actions of Papillon have not been proven to be continuous, systematic, or substantial.  Plaintiff Shymatta has also failed to establish specific personal jurisdiction because there has been no evidence presented by Plaintiff that Papillon purposefully availed himself in Idaho; there was no evidence establishing an action or "something more" that was specifically directed at Idaho.  Further, even if Papillon had himself purposefully directed his actions into Idaho through his blogs on the TCPJ website in Idaho, it would not substantially unfair and unjust to hail him into our Idaho Courts where he did not extensively interject himself and his actions into Idaho, where Idaho has no keen interest in adjudicating this action in this forum, and where Plaintiff Shymatta will not be prejudiced by having to litigate his claims in Arizona.  For all the foregoing reasons, Papillon respectfully requests that the Court grant his Motion to Dismiss as there is a lack of jurisdiction.

DATED this 21st day of December, 2010.


Erika Lessing, Esq. appearing specially for
Defendant Papillon


BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION          -17-

## NON-ELECTRONIC CERTIFICATE OF SERVICE

I hereby certify that on this _21st_ day of December, 2010, I caused a true and correct copy of the

foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF

system.  Further, as the opposing party is *pro se*, a hard-copy of the preceding was mailed via

USPS first-class mail [with correct postage attached] to :


Person(s) Served:
David Shymatta
*Plaintiff pro se*
210 Hwy. 30, 30 E Box 38
Inkom, ID 83245




Erika Lessing