Michael G. Dustin, ISB #7666
mgd@meachamdustin.com
Erika Lessing, ISB #6797
el@meachamdustin.com
**MEACHAM & DUSTIN, PLLC**
2058 Jennie Lee Drive
Idaho Falls, ID  83404
Phone: (208) 522-0022
Facsimile: (208) 522-0088

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DAVID SHYMATTA, dba CELL JUNKIE, | ) | CASE NO. 10-0565-E-BLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL PAPILLON, dba THE CELL | ) | |
| PHONE JUNKIE, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant MICHAEL PAPILLON, by and through his attorneys, the law firm of

Meacham & Dustin, PLLC, submits the following reply in support of Plaintiff's Motion to

Dismiss for Lack of Personal Jurisdiction.

## I. POINTS FOR CORRECTION

The Plaintiff is remiss in several aspects of his response and affidavit which duly require

correction or clarification.  First, Mr. Papillon has not filed any legal action in Idaho and has not

sought to avail himself in the State of Idaho through any legal proceeding.[1] There has been an application made by Mr. Papillon to the U.S. Patent and Trademark Offices ("USPTO") concerning the registration of a mark purportedly held by Plaintiff.  However, determination upon a trademark application or cancellation petition is handled by or falls solely under the jurisdiction of by the USPTO pursuant to §15 USCS 1063 & 1064. Any such application to the USPTO does not involve any court of any jurisdiction.  Accordingly, the application to the USTPO was not an act by Mr. Papillon to avail himself of the rights, rules, privileges or protections of the State of Idaho.

Second, Defendant suggests that Mr. Papillon has admitted certain claims made in the Plaintiff's *Complaint*.  Mr. Papillon has neither admitted nor denied the substantive averments of Plaintiff's *Complaint* concerning the claims of trademark violation/dilution and unfair trade.

Third, Mr. Papillon and The Cell Phone Junkie website ("TCPJ Website") are neither retailers nor wholesalers of goods.  Plaintiff included as an exhibit an unidentified captured webpage image to suggest that TCPJ Website is a retailer and that it sells cell phone covers.[2] Assuming that the image originated from the TCPJ Website, there is no indicia that the product is sold by Mr. Papillon or the TCPJ Website,*i.e.*, no icon that says "add-to-cart" no icon which says "buy now" and no indicia that TCPJ Website has an order form or web page for ordering.  The same can be said for the phone shown in Plaintiff's Exhibit 4, page 2.

Further, visitors to the TCPJ website who may be interested in purchasing the cell phone

---

[1] *Affidavit of David Shymatta in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss*, ¶ 5.

[2] *Complaint*, Ex. G, pg.1.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION                                                                    2

cover are specifically guided to a site called "Otterbox" at a URL not associated with the TCPJ

Website's URL.  Therefore, the limited exhibits are not only foundationally unreliable, but fail to

establish that Mr. Papillon and the TCPJ Website is a retailer of cell phone and cell phone

accessories.

## II.  COUNTER–ARGUMENT

A.   **Holding a Pro Se Party to a Lower Requirement for the Form of a Pleading
Does Not Excuse the Pro Se Party of His Burden of Proof Nor Lower the
Burden of Proof.**

Plaintiff argues that pleadings of a *pro se* party are to be construed liberally and that the

pleadings of pro se litigants are to be held to less rigid standards than those drafted by attorneys

which is correct.[3]  The Civil Rules of Procedure were drafted to relieve from the technical

requirements for pleadings[4] and holding a *pro se* party to a lower standard fits with

our notions of justice and fairness.  However, holding a pro se party to a lower standard for his

form of pleading does not lessen the burden of proof that a *pro se* party bears. Neither the rules of

civil procedure nor any case law has stated that a *pro se* parties' burden of proof should be

lowered because of his unrepresented status. Plaintiff, while allowed some latitude in the form of

his pleading, still must meet his burden of establishing purposeful availment by Defendant and

that Plaintiff's claims relate to the forum-related activities.

---

[3]Zichko v. Idaho, 247 F. 3d 1015 (9th Cir. 2001).  Though Plaintiff's reliance upon Zichko for this notion is misplaced in that the Zichko Court was dealing with an incarcerated party and the court specifically made its decision where the complaining party was a prisoner.

[4]Carchman v. Nash, 473 U.S. 716 , 744-45 (1985).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION                                                3

**B.**     **The TCPJ Website is Not Truly Interactive; the Zippo Sliding Scale to Determine Purposeful Availment Should Not Be Applied Here.**

The Plaintiff argues that to determine whether jurisdiction is proper, the courts look to "a variety of factors"[5] including the sliding scale test [dervied from *Zippo Mfg. Co. v. Zippo Dot Com*[6] and as applied in the Ninth Circuit in *Cybersell, Inc. v. Cybersell, Inc.*[7]]   This is not correct.  To determine whether specific personal jurisdiction is proper, the courts of the Ninth Circuit apply a three prong test[8], the first two prongs of which the Plaintiff bears the burden of establishing.[9]  The *Zippo* sliding-scale is merely a tool by which the courts determine the first portion of the first prong, *i.e.*, whether a defendant has purposefully availed himself of the privilege of conducting activities within the forum state.[10] In other words, the Zippo sliding scale is not the sole consideration in determining whether specific personal jurisdiction should be applied.

---

[5] *Plaintiff's Opposition to Defendant's Motion to Dismiss*, p. 5.

[6] Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1121 (W.D. Pa. 1997).

[7] Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997).

[8] This test is also known as the "Calder effects" test as derived from Calder v. Jones, 465 U.S. 783, 789-90 (1984).

[9] The first two prongs as delineated in  Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007) are:
1.      There was purposeful availment by the defendant in the forum by defendant's conduct of activities in or toward the forum and invoking the benefits and protections of the forum's laws. [This availment is determined by the defendant's commission of an intentional act, which was expressly aimed at the forum state, and which caused harm, the brunt of which is suffered in the forum state and which the defendant knew was likely to be suffered in the forum state. See ]
2.      The claim relates to the forum-related activities.

[10] Cybersell, 130 F.3d at 417.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION                                                              4

Even as a tool, the Zippo sliding-scale is most likely not the right tool in this case in order to determine purposeful availment. This is because the *Zippo* case is not only factually distinguishable from this instant case–as the *Zippo* defendant had contracts with thousands of customers in the forum and also 7 agreements with local service providers in the forum–but because *Zippo* involved a site that was commercially interactive. In *Zippo*, the defendant had a commercially interactive website which permitted visitors to fill out an on-line application for membership and to pay for that membership by credit card over the Internet *at the site*.[11]

The TCPJ Website is not commercially interactive like that of the *Zippo* defendant. The only for-pay service associated with the TCPJ Website is the premium podcasts and those cannot be ordered from the TCPJ Website; interested parties can only e-mail an inquiry to sign up for the premium podcasts. Then any transactions for premium podcasts take place outside of the TCPJ website.[12]

In this manner, the TCPJ Website is more akin to the website in *Bensusan*[13], as discussed in *Zippo*, where no commerce could be conducted at the site. In *Bensusan*, interested parties in a performance at defendants' business had to call a telephone number listed on the webpage in order to conduct business with the defendant and obtain tickets.[14] In other words, the commercial activity occurred off the *Bensusan* defendant's website. The Bensusan defendant had the website

---

[11]Zippo, 952 F. Supp. at 1121.

[12]*Affidavit of Michael Papillon in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction*, ¶ 14.

[13] Bensusan Restaurant Corp. v. King,, 937 F. Supp. 295 (S.D.N.Y. 1997), aff'd 126 F.3d 25 (2d Cir. 1997).

[14]Id. at 297.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION                    5

merely for informational purposes.

In this case, a TCPJ affiliated person has to be emailed people's queries regarding the premium podcasts. The person then responds to the email, off of the website, and the person can then pay for the service through means which do not involve the TCPJ Website.[15] As such, the TCPJ Website is not a commercially interactive website like that of Zippo Dot Com to which the sliding scale was applied. Therefore, the tests set forth in *Rio Properties, Inc. v. Rio Int'l Interlink*[16] is more appropriate, as that test deals with commercially passive websites.

### C.   Plaintiff Has Not Established that Papillon and the TCPJ Website Engaged in "Something More."

Plaintiff has not established Mr. Papillon and the passive TCPJ Website engaged in 'something more' as set forth in *Rio*. Plaintiff attempts to suggest that Mr. Papillon and the TCPJ Website advertise in this forum because Idahoans can visit the TCPJ Website[17] from their home computers located in Idaho and because an electronic search on the Google search engine turned up results which contained the terms "cell phone junkie" and the terms "Boise" and "Idaho." As a preliminary matter, conducting searches on the Internet is not the same as advertising. In conducting a search, the individual is actively reaching out for information. In conducting advertising, the business is actively reaching out to the individual to provide the individual information about the product. Thus, searches and advertising are not the same.

Here, Plaintiff has not established that TCPJ engaged in any advertising, let alone

---

[15] *Affidavit of Michael Papillon,* ¶ 14.

[16] Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2000).

[17] *Affidavit of David Shymatta,* Ex. 2.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION                                                                          6

advertising in Idaho.  There has been no evidence put forth to show that the TCPJ Website or Mr.

Papillon has purchased advertising or sold, broadcast, or displayed advertising targeting Idaho.

The only evidence that Plaintiff sets forth is vague documentation that the TCPJ name has been

displayed by other websites, such as a site purportedly called Howard Forums[18], or that a website

called "Crackberry" has displayed the TCPJ Website logo and discussed an upcoming podcast.[19]

There is no evidence that TCPJ ever paid for the use of its name, encouraged the use of its name,

or that TCPJ even condoned the use of its name by other sites.

> **D.**   **Even if the TCPJ Website Were to Be Deemed Interactive, Thus Triggering the Application of the *Zippo* Sliding Scale, There Would Still Be No Finding of Purposeful Availment.**

> **1.**   **The TCPJ Website is not substantially commercial as the nature and quality of any 'commerce' conducted at the site is extremely limited.**

Mr. Papillon maintains that the TCPJ Website is not commercially interactive.  However,

even if the TCPJ Website could be deemed interactive, because the readers of the TCPJ Website

can comment on stories on the site, the application of the Zippo sliding scale establishes that the

TCPJ Website does not fall on the high end of the Zippo scale [fully interactive and fully

commercial] nor does it fall in the middle of the scale [mostly interactive and mostly

commercial].  In fact, the TCPJ Website would fall only on the very lower edge of the Zippo

sliding scale.  This is because the TCPJ Website has only limited interactivity, does not require

users to provide any sort of information to obtain downloads of podcasts, does not conduct

---

[18]*Affidavit of David Shymatta*, Ex. 3.

[19]*Affidavit of David Shymatta*, Ex. 1, p. 1.

interactive commercial activity at the the TCPJ Website, and does not maintain the website for the primary purpose of turning a profit.[20]

The *Zippo* sliding scale looks at the level of interactivity between the user and the host computer and at the nature and quality of commercial activity of a website.[21]   The cases in which specific personal jurisdiction <u>has been found</u> under the *Zippo* sliding scale included those where the primary goal or an important goal of the establishment and/or maintenance of the website was to conduct financial business or to raise money.[22]  Cases which have fallen on the upper end of the *Zippo* sliding scale, those which merit a finding of specific personal jurisdiction, include: a website which sold patent-infringing goods and the purchase of said goods was conducted on-line at the website and also where the website provided information about customer service of the website[23]; a case where a website under a particular domain name which utilized the plaintiff's trademark was established by the defendant purposefully to induce the plaintiff to pay the defendant for rights to obtain the domain name[24]; and a case where a website required users to enter their contact information to gain access to information on the website with the express intent of selling the contact information entered by users to a third party.[25]

---

[20]*Affidavit of Michael Papillon*, ¶¶ 15-16.

[21]<u>Cybersell</u>, 130 F.3d at 418.

[22]<u>Quigley v. Guvera IP Pty. Ltd.</u>, 2010 U.S. Dist LEXIS 134409, at *8-9 (N.D. Cal. 2010).

[23]<u>Stomp, Inc. v. NeatO, LLC</u>, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999).

[24]<u>Panavision Int'l v. Toeppen</u>, 141 F.3d 1316, 1321 (9th Cir. 1998).

[25]<u>Am. Auto. Ass'n, Inc. v. Darba Enters., Inc.</u>, 2009 U.S. Dist. LEXIS 37594, 2009 WL 1066506, at *4 (N.D. Cal. 2009).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION                                                    8

Instances where <u>no specific personal jurisdiction</u> has been found using the *Zippo* sliding scale include: a website which did not provide any direct means for purchasing parts or requesting services and only provided information on the products manufactured by the defendant and redirected potential customers to the appropriate subsidiary[26]; and a website of an automotive paint company which included the telephone & facsimile numbers of contact persons in the company, e-mail addresses of contact persons in the company, and a "shop" which enabled U.S. customers to purchase defendant's promotional merchandise [t-shirts and baseball caps] but where no paint products themselves could be purchased through the website.[27]

In the instant case, there is no commerce which can be conducted at or on the TCPJ Website. The only money generated by the TCPJ Website and Mr. Papillon has been from the sale of a few limited premium podcasts wherein money from the podcasts was received off of the TCPJ Website. More importantly, economic gain is not the primary or even secondary purpose of the TCPJ Website. The primary purpose of the the TCPJ Website is to blog, inform, and disseminate information. The secondary purpose is to allow people to post limited comment on the stories, but not add content of their own. It is only a tertiary purpose to offer a subscription to the premium podcasts.

The fact that the instant Website is not primarily nor even secondarily commercial can be better understood by analyzing the financials from the TCPJ Website. For 2010, the total amount of monies received was approximately $3,000.[28] Even assuming that $3,000 worth of podcasts

---

[26]<u>Holland Am. Line, Inc. v. Wartsila N. Am., Inc.</u>, 485 F.3d 450, 460 (9th Cir. 2007).

[27]<u>Thiring v. Borden</u>, 2007 U.S. Dist. LEXIS 47176 at *11 (D.C. Ore. 2007).

[28]*Affidavit of Michael Papillon*, ¶ 15.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION                                                          9 .

were sold each calendar year since the TCPJ Website has been operating, the total amount

grossed by Mr. Papillon and the TCPJ Website for its lifetime has only been $13,500.  This

amount barely allows Mr. Papillon to buy new technology and monthly internet services

sufficient to perpetuate his blogging activities.  Given that the nature and the quality of any

commercial activity conducted on the TCPJ Website is extremely limited, the exercise of specific

personal jurisdiction would not be appropriate.

> **2.     Plaintiff has not established that Mr. Papillon or the TCPJ Website
> purposefully aimed activities at Idaho.**

Lost in the discussion of the commercial nature of the TCPJ Website is the fact that

Plaintiff has not established that Mr. Papillon purposefully aimed activities at Idaho.  Plaintiff

bears the burden to establish the second of the *Calder* effects test's prongs–that defendant's

intentional act was expressly aimed at the forum state.  Plaintiff provides no meaningful or

relevant evidence on this critical issue.  Rather, he offers a series of confusing and factually

irrelevant references that have little bearing on the issue of whether Defendants aimed activities

at Idaho.  Plaintiff suggests that running a Google search including the term "Idaho" with the

name of the TCPJ Website and receiving two or three hits containing those terms is evidence that

Defendants aimed activities at Idaho.  In addition, Plaintiff asserts that the fact that a user posted

information in June 2010 on a website known as "www.crackberry.com" purportedly talking

about an upcoming podcast on the TCPJ Website is further evidence that Defendants aimed

activities at Idaho.  Finally, Plaintiff contends that on this same crackberry website, there were

postings by a few persons identifying themselves as being from Idaho and looking for "other

western mountain state users" or who identify themselves as "Bb users in Utah/Idaho"[29]

Plaintiff failed to make clear how any of these documents are relevant to this action or even related to one another. The documents appear to be from a "Crackberry" website. They do not identify Mr. Papillon as being an Idaho resident. They do not demonstrate that Mr. Papillon and the TCPJ Website were somehow recruiting Idaho persons or trying to sell any products or advertisements in Idaho. Whatever Plaintiff's intent in providing these documents, they do not demonstrate that the TCPJ Website was aimed at the State of Idaho. Plaintiff has not met his burden to demonstrate that the TCPJ Website intended for its site to reach out to citizens of the State of Idaho.

3.   **Plaintiff has not established that his claims arise out of any activity by Mr. Papillon or the TCPJ Website in Idaho.**

Plaintiff's primary claim is that the TCPJ Website retails cell phone covers and other cell phone wares which, Plaintiff claims, are in direct competition with his own cell phone covers and accessories. Plaintiff further claims that this alleged retail activity is a dilution of his trademark and constitutes unfair competition with his website. Plaintiff has not set forth any evidence that Mr. Papillon or the TCPJ Website even retails any sorts of goods, let alone retailing goods into Idaho.

The only showing that Plaintiff has made is that TCPJ Website refers readers to other third-party websites. The fact that the TCPJ Website refers to others' websites where visitors may engage in commerce at those sites, such as the "Otterbox" website, does not support a finding of specific personal jurisdiction over Mr. Papillon and the TCPJ Website. The third-

---

[29] *Affidavit of David Shymatta*, Ex. 1.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION                                                                11

party sites conduct their own commerce independent of Mr. Papillon and the TCPJ Website. The activity of those websites would support a finding of specific personal jurisdiction only if Mr. Papillon and the TCPJ Website first, had hyperlinks to those sites and also maintained some responsibility for or control over the activities and contents of these third-party retail sites.[30]

Plaintiff has proffered no evidence to suggest that the TCPJ Website has hyperlinks to other websites and that it maintains control over third-parties retail websites. As such, Plaintiff's evidence has not established that the Plaintiff's claims for unfair competition of goods and dilution of a trademark relating to his sale of cell phone parts or accessories relate in any way to the actions of the TCPJ Website or Mr. Papillon. As Plaintiff has not established that his claims relate to any forum-based activities of the Defendant, Plaintiff has not met his second burden. Consequently, there should be no finding of specific personal jurisdiction over the Defendant.

### III. CONCLUSION

The finding of specific personal jurisdiction over a party is appropriate where the defendant purposefully avails himself of a jurisdiction by the use of his website where he intends to use the website to conduct business or generate revenue from his efforts, in other words, to reach out and utilize the pocketbooks of a certain populace from a certain forum State. It is appropriate to hail a defendant into our Idaho courts where he intentionally makes use of Idaho laws and protections, intentionally makes use of Idaho citizens, and intentionally makes use of

---

[30] *See* Trintec Industries, Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275, 1281 (Fed. Cir. 2005) *citing* Jung v. Ass'n of Am. Med. Colls.,300 F. Supp.2d 119, 132 n.5 (D.D.C. 2004) distinguishing cases where personal jurisdiction is based upon defendant's activities on its own website from situation where third party's website was used.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION                                                          12

Idahoan's money for profit and gain.

　　　Mr. Papillon is not an e-commerce retailer; he does not make his living from the TCPJ Website. He has a career as the manager of large commercial properties in Arizona. Mr. Papillon is a hobbyist blogger with a love of cell phones and all things cellular. He uses the TCPJ Website and his handle as TheCellPhoneJunkie merely to disseminate his ideas and opinions. He has not used nor ever intended to use the TCPJ Website to have a cell-phone home business. Mr. Papillon certainly never intended to come to Idaho, to conduct business in Idaho, nor to be hailed into Court in Idaho. The Plaintiff has not met his burden to show otherwise. As such, this Court should not exercise specific personal jurisdiction over this Defendant.

DATED this ___27th___ day of January, 2011

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Erika Lessing, Esq., appearing
　　　　　　　　　　　　　　　　　　　　　　　specially for Defendant Papillon

## NON-ELECTRONIC CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2011, I caused a true and correct copy of

the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF

system.  Further, as the opposing party is *pro se*, a hard-copy of the preceding was mailed via

USPS first-class mail [with correct postage attached] to :


Person(s) Served:
David Shymatta
*Plaintiff pro se*
210 Hwy. 30, 30 E Box 38
Inkom, ID 83245

_____
Erika Lessing


DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION                                                            14